# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Christopher Michael Ochoa, Respondent.

Appellate Case No. 2019-000040

Opinion No. 27882
Submitted March 27, 2019 – Filed April 24, 2019

### DEBARRED

John S. Nichols, Disciplinary Counsel, and Ericka M. Williams, Senior Assistant Disciplinary Counsel, of Columbia, for the Office of Disciplinary Counsel.

Christopher Michael Ochoa, of Florida, *pro se*.

**PER CURIAM:**   Respondent, previously licensed in Florida[1] but not in South Carolina, entered into an agreement with a non-attorney owned company (NVA) to market his legal services on the internet.  Although respondent operated a solo practice in Florida, through NVA's advertisements, he specifically targeted South Carolina residents seeking to negotiate modifications of their home loans in violation of provisions of Rules 7.1 and 7.5, RPC, Rule 407 SCACR.  Further, respondent provided legal services to numerous South Carolina residents regarding South Carolina legal matters without being licensed or otherwise authorized to practice law in in this state in violation of Rule 5.5, RPC, Rule 407, SCACR, and Rule 7(a)(1), RLDE, Rule 413, SCACR.

---

[1] On May 2, 2018, respondent was disbarred by the Supreme Court of Florida for misconduct involving lack of competence, failure to safe keep property, and conduct involving dishonesty, fraud, deceit, or misrepresentation. *The Fla. Bar v. Ochoa*, No. SC17-1632, 2018 WL 2073195, at *1 (Fla. May 3, 2018).

Following an evidentiary hearing at which respondent did not appear, the Commission Hearing Panel (the Panel) recommended debarring respondent and ordering respondent pay the cost of the proceedings and restitution to two of his South Carolina clients. Neither party sought review of the Panel's report, and the matter is now submitted for the Court's consideration. We impose the sanctions recommended by the Panel.

## FACTS

Although he identified himself as "licensed in the State of Florida," stated his law office was located at a Florida address, and he was not licensed to practice law in South Carolina, respondent offered legal services in thirty-five specified states, including South Carolina, through the law firm's "national network of attorneys." Respondent recruited attorneys in South Carolina and other states to handle legal matters as "of counsel" to respondent's firm. In exchange for legal services, clients were required to pay an up-front retainer and agree to monthly bank drafts, which were electronically deposited directly into respondent's operating account. Fee payments to NVA and local counsel were then paid by respondent from the operating account.

### *The V.S. Matter*

In October 2013, a foreclosure action was filed against South Carolina homeowner V.S. by her mortgage lender. In response, V.S. retained respondent through NVA. V.S. signed electronic forms, including an "Engagement Agreement for Limited Representation" and a "Payer Services Agreement." Pursuant to the Payer Services Agreement, respondent collected two initial payments of $550 each and monthly payments of $605 via electronic funds transfers from V.S.'s personal bank account. Under the Engagement Agreement, respondent agreed to provide "legal services" including "representation to help the Client(s) achieve a satisfactory resolution with a mortgage that is in, or about to enter, default," and to "perform all legal services rendered herein, in accordance with the Florida Rules of Professional Conduct, and other applicable standards of law and ethics, as may be required in different jurisdictions."

V.S.'s daughter spoke with respondent twice over the phone and both times respondent assured her he was an attorney and could help V.S. However, in late December 2013 or early January 2014, after V.S. received notice of a January 2014 hearing date in her pending foreclosure action, V.S.'s daughter contacted

respondent to inform him about the court date. According to V.S.'s daughter, respondent stated that for an additional $300 per month he could have retained a South Carolina lawyer to represent V.S. in court but, "due to time constraints," there would not be enough time to do so.

Unknown to V.S. or her daughter and contrary to the information provided to them, respondent retained the services of a South Carolina attorney as "of counsel" in October 2013. The South Carolina attorney was never notified of the filing of the foreclosure action against V.S. or of the hearing date. After repeated failed attempts to obtain information from respondent's office about the status of V.S.'s representation, the South Carolina attorney ended her relationship with respondent's law firm in January 2014.[2]

During the course of respondent's representation of V.S., respondent's non-lawyer employees sent V.S. repeated requests for the same paperwork. In February 2014, V.S.'s daughter spoke with one of respondent's non-lawyer employees and complained about the duplicate paperwork requests. In response, respondent sent V.S. a form letter terminating the attorney-client relationship. The letter provided no explanation for the termination, no information regarding the status of the matter, no advice regarding how to proceed, and no refund of fees, which by that time totaled $2,310.

### The W.W. Matter

In May 2014, South Carolina homeowner W.W. retained respondent through NVA. W.W. signed forms provided to him by an NVA employee via email, including the same Engagement and Payer Services agreements discussed above. Respondent collected an initial payment of $900 and monthly payments of $550 via electronic fund transfers from W.W.'s personal bank account. Within a month of being retained, respondent was informed a foreclosure action had been filed against W.W. Respondent retained South Carolina counsel; however, counsel's only involvement with the case was to review the file once in May 2014 and once in December 2014.

During the course of the representation, W.W.'s case was assigned numerous non-

---

[2] At no time during the representation did the South Carolina attorney have any contact with V.S. or her daughter, nor did the South Carolina attorney perform any services for or on behalf of V.S.

attorney NVA case managers with whom W.W. had difficulty communicating. By the end of September 2014, W.W. had become dissatisfied with the lack of progress on his loan modification and informed NVA and/or respondent he did not wish to make any further monthly payments. However, respondent continued to draw the payments from W.W.'s bank account until the end of December 2014, when respondent sent a letter to W.W. terminating the attorney-client relationship. Like the form letter V.S. received, W.W.'s form letter provided no explanation for the termination, no information regarding the status of the matter, no advice regarding how to proceed, and no refund of fees, which by that time totaled $4,750.

### *Advertising and Solicitation*

Respondent provided legal services on a systematic and continuous basis in South Carolina by agreeing to represent V.S. and W.W. and numerous other South Carolina residents in the negotiations of modifications for their home loans. Respondent engaged in the unauthorized practice of law in South Carolina by providing legal services to South Carolina residents regarding South Carolina legal matters without being licensed or otherwise authorized to practice law in this state.

Further, respondent specifically targeted South Carolina residents via his website. Additionally, respondent's website contained the following advertising statements in violation of Rule 7, RPC, Rule 407, SCACR:

1. Statements that attorneys would be handling clients' legal matters when, in fact, non-attorney "case managers" handled all of the negotiations and almost all of the client contact;

2. Statements that implied the local attorneys were members of or employed by respondent's law firm when, in fact, the local attorneys were paid on a piecemeal or contractual basis;

3. Statements that created unjustified expectations, such as "we ensure that you get the best possible solution when it comes to your home foreclosure," and "[t]he attorneys . . . are dedicated to helping homeowners receive the best possible resolution to their mortgage issues";

4. The use of stock photos depicting a variety of attorneys and the use of phrases referring to multiple attorneys, implying respondent practiced in a

partnership when that was not the case, such as "our attorneys work with all servicers and lenders"; "the firm employs an extensive network of attorneys"; "we are your advocates"; "our team of attorneys"; and "our foreclosure attorneys at the Law Office of Chris Ochoa, P.A."

## ANALYSIS

Respondent failed to cooperate with the Office of Disciplinary Counsel's (ODC) investigation, did not answer ODC's formal charges, and was found to be in default. Therefore, respondent is deemed to have admitted the factual allegations made against him in the charges. *See* Rule 24(a), RLDE, Rule 413, SCACR ("Failure to answer the formal charges shall constitute an admission of the allegations.").

Further, although not licensed in South Carolina, respondent is subject to discipline by this Court. By providing legal services in South Carolina and targeting advertisements and solicitations to this state, respondent meets the definition of "lawyer" provided in Rule 2(r), RLDE, Rule 413, SCACR, which includes "a lawyer not admitted in this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction; or anyone whose advertisements or solicitations are subject to regulation by Rule 418, SCACR."[3] As such, pursuant to Rule 8.5(a), RPC, Rule 407, SCACR, and Rule 418(d), SCACR, respondent is subject to the disciplinary authority of this Court and the Commission and to the provisions of the Rules of Professional Conduct to the same extent as a lawyer admitted to practice law in this state.

Respondent's conduct violated Rule 7(a)(1), RLDE, Rule 413, SCACR (violating the Rules of Professional Conduct). Specifically, respondent's representation of V.S. and W.W. violated Rules 1.1 (competence), 1.2 (scope of representation), 1.3 (diligence), 1.4 (communication), 1.5(a) (unreasonable fees), and 1.16(d) (protection of client's interest upon terminating representation), RPC, Rule 407, SCACR. In relation to his representation of South Carolina residents while not

---

[3] Rule 418, SCACR, entitled "Advertising and Solicitation by Unlicensed Lawyers," defines an "unlicensed lawyer" as an individual "who is admitted to practice law in another jurisdiction but who is not admitted to practice law in South Carolina . . . ." Rule 418 also provides this Court with jurisdiction over allegations of misconduct by foreign lawyers and procedures for determining misconduct charges and sanctions. Rule 418(d), SCACR.

licensed or otherwise authorized, respondent violated Rules 5.5(a) (unauthorized practice of law), 5.5(b) (establishing a systematic and continuous presence in the jurisdiction for the unauthorized practice of law), and 8.4(b) (misconduct), RPC, Rule 407, SCACR. Finally, respondent's website and advertisements violated Rules 7.1 (communication concerning a lawyer's services) and 7.5 (firm names and letterheads), RPC, Rule 407, SCACR.

Accordingly, respondent is hereby debarred from the practice of law in this state. Respondent is prohibited from practicing law or seeking any form of admission to practice law in South Carolina, including pro hac vice admission, without first obtaining an order from this Court. *See* Rule 2(g), RLDE, Rule 413, SCACR (describing the sanction of "debarment"). Further, respondent shall, within thirty days of the filing of this opinion, pay $869.11 for the costs of these proceedings to the Commission and restitution in the amount of $2,310 to V.S. and $3,750 to W.W.[4] If respondent is unable to pay these amounts in full within thirty days of the filing of this opinion, within the same time frame, he must enter into a reasonable payment plan with the Commission.

**DEBARRED.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**

---

[4] At the panel hearing, ODC advised the Panel respondent had made payments totaling $1,000 to W.W., reducing the remaining amount of restitution owed W.W. to $3,750.